SUPREME COURT. At Chambers, Poughkeepsie, August 9, 1855
Before *Dean*, Justice.

## THE PEOPLE *vs.* JOHN JOHNSON.

The right to a trial by a common law jury of twelve men, in cases of misde-
meanor, is secured by the constitution of this state, and can not be taken
away by the legislature.

The law in reference to an examination applicable to other cases of misde-
meanor, is alike applicable to offences for selling intoxicating liquor contrary
to the provisions of the act "to prevent intemperance, pauperism and
crime," passed April 9, 1855.

A person charged with the offence of selling intoxicating liquor contrary to
the provisions of that act, has the right to give bail to appear and answer
at the next criminal court having cognizance of the offence, and in which he
may be indicted, as in other misdemeanors triable by a Court of Special
Sessions.

The facts of this case are set forth in the opinion of the
judge.

DEAN, J.—The prisoner was arrested on a warrant issued by
the recorder of this city, charging him with a violation of the
act of April 9, 1855, entitled "an act for the prevention of
intemperance, pauperism and crime." When taken before the
recorder, he demanded that an examination, as in other criminal
cases, should be had, which was refused. He then offered to
give good and sufficient bail, and such as the recorder would
approve, for his appearance at the next criminal court having
jurisdiction of the offence, and in which an indictment might
be found. The recorder refused to take bail, on the ground
that the act in question did not permit the prisoner to give
bail for his appearance to answer for the offence charged, at a
criminal court having jurisdiction of the offence, but required
him, the recorder, as a court of Special Sessions to proceed
with the trial of the case; whereupon the prisoner presented
his petition to me for a writ of habeas corpus to inquire into
the cause of his detention. The prohibitory act, as it is usually
termed, contains twenty-six sections, some of which are long,

The People v. Johnson.

perhaps unnecessarily so. The design of the law, together with the means used to effect that design, are alike novel in the legislation and jurisprudence of this state, and it would be indeed strange if the zeal which has succeeded in procuring the passage of the law, which promises to " prevent intemperance, pauperism and crime," should not at some point have overstepped the bounds of legislative power, or failed in using language with sufficient precision to withstand the searching criticism of legal learning and professional acumen. If in any instances the former has occurred, it is the duty of the courts to restrain the operation of the law to the legitimate boundaries prescribed by the constitution for the exercise of legislative power; and if its framers have any where failed in the use of apt and precise language to express the true intent of the enactment, it is also the duty of the courts to point out the defects, that subsequent legislatures may provide the remedy. In the case now to be decided it is only necessary to examine and construe a single section of this law, and whatever conclusion is reached, it in no manner affects any other portion of the act. The right to a trial by jury—that is, a jury of twelve men, selected by ballot from the body of the county, and impanneled as in other criminal cases—is what the prisoner claims. This right is denied by the prosecution, and instead of such trial it is claimed that a person suspected of having sold intoxicating liquors in violation of law, can be arrested, and without any examination of the complainant and his witnesses, without any indictment, with no specification except the general statement contained in the complaint, can be compelled to proceed to trial before an inferior magistrate, with but a jury of six men, and if convicted can be fined and imprisoned, and disqualified from acting as a juror upon any trial under the provisions of this act. If the law is as contended for by the prosecution, then the trial for the misdemeanor created by this statute is on a different footing from any other, for it was not pretended on the argument, but that a person charged with any other offence triable by the Court of Special Sessions might, if he chose, give bail in the manner in which the prisoner pro-

The People *v.* Johnson.

posed in this case. If the right exists, I must take the bail and discharge the prisoner. If it does not, he must be remanded for trial. There is probably no one subject which has been so jealously guarded, and so uniformly lauded since the date of the celebrated magna charta, as the common law right to a trial by jury. So important was it deemed that it was thought necessary to make provision for it in the fundamental law by an amendment to the federal constitution, which is in these words: " In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial by an impartial jury." This applies to all offences cognizable in the federal courts; so by the bill of rights in this state, it is declared, " In all criminal prosecutions, the accused has a right to a speedy and public trial by an impartial jury, and is entitled to be informed of the nature and cause of the accusation." The constitution of the state, as adopted in 1846, provides that " The trial by jury, in all cases in which it has been heretofore used, shall remain inviolate forever." Judge Story in his Commentaries on the Constitution, (vol. 3, § 1773,) says: " It is hardly necessary in this place to expatiate upon the antiquity or importance of trial by jury in criminal cases. It was from very early times insisted on by our ancestors in the parent country, as the great bulwark of their civil and religious liberties, and watched with an unceasing jealousy and solicitude. * * When our more immediate ancestors removed to America, they brought this great privilege with them as their birthright and inheritance, as a part of that admirable common law which had fenced round and interposed barriers on every side against the approaches of arbitrary power. It is now incorporated into all our state constitutions as a fundamental right, and the constitution of the United States would have been justly obnoxious to the most conclusive objection if it had not recognized and confirmed it in the most solemn terms." This right, therefore, having been held of such vital importance for so many centuries, would not be relinquished without a struggle, and can not be taken away by an inference drawn from ambiguous or doubtful words, even if the legislature possessed the power. But I have no hesita-

The People *v.* Johnson.

tion in saying that, as in 1846, the time of the adoption of our present constitution, the person accused of a misdemeanor, of whatever grade, had a right at his election to a trial by a common law jury of twelve men; and as that constitution which is the fundamental law—the permanent will of the majority—declares that " the trial by jury in all cases in which it has been heretofore used, shall remain inviolate forever." The legislature is prohibited from depriving a person accused of a criminal offence of the right to a trial by such a jury; and, consequently, that if this law did, in express terms, deprive the accused of such right, I would hold that portion of it void, and to be disregarded by every judicial tribunal. But the conclusion to which I have arrived on the construction of the section of the act on which the prisoner was arrested, renders any further discussion of this point unnecessary. That portion of the fifth section of the act which bears upon the question raised in the present case is,

§ 5. Every justice of the peace, police justice, county judge, city judge, and in addition, in the city of New York, the recorder, city judge, each justice of the Marine Court, and the justices of the district courts, and in all cities where there is a Recorder's Court, the recorder, shall have power to issue process, hear and determine charges, and punish for all offences arising under any of the provisions of this act; and they are each hereby authorized and required to hold courts of Special Sessions for the trial of such offences, and under this act to do all other acts, and exercise the same authority that may be done or exercised by justices of the peace in criminal cases, and by courts of Special Sessions, as the same are now constituted; and the term magistrate, as used in this act, shall be deemed to refer to and include each officer named in this section. Such court of Special Sessions shall not be required to take the examination of any person brought before it upon charge of an offence under this act, but shall proceed to trial as soon thereafter as the complainant can be notified.

By this section the magistrates named have authority to issue process, to hear and determine charges, to punish for

offences under the act, to hold courts of Special Sessions for the trial of the offences, and to do all other acts that justices of the peace may do in criminal cases, and exercise the same authority that justices of the peace and courts of Special Sessions may exercise. But it confers no new powers upon courts of Special Sessions. This gives to each of these magistrates full authority to have an examination as in other criminal cases to determine whether there is probable cause to hold the prisoner for trial or to demand bail. And I do not see from this section how it can be held that the prisoner, if he does not elect to be tried by a court of Special Sessions, can be deprived of the statutory provision permitting an examination of the complainant and his witnesses in each case. The only part of the section which can be supposed to take away the right to this examination and the right to require the magistrate to discharge him on giving bail, is the following sentence: " such court of Special Sessions shall not be required to take examination of any person brought before it, upon charge of an offence under this act, but shall proceed to trial as soon thereafter as the complainant can be notified." This declares only that the court of Special Sessions shall not be required to take the examination of the prisoner. As that court never possessed the power to take such examination, the probability is that the legislature intended to relieve the magistrate issuing the process from the burden of an examination in the case of complaints for selling intoxicating liquors. And as this was within the power of the legislature, had any language been used which could effect that object, I would have felt bound to so construe it as to carry out the intention of the legislature. But I can not, by any possible construction, say that the words " such court of Special Sessions," mean " such magistrate," &c. And without substituting words other than those now in the law, the right of the prisoner to an examination is not taken away. And as my power is not legislative, but judicial only, I am not at liberty to change the act in a single letter, even to accomplish the intent of its framers. But it is contended that as this sentence requires the court of Special Sessions to

The People *v.* Johnson.

proceed to trial as soon after the prisoner is brought before it, as the complainant can be notified that the prisoner is by this deprived of the right to give bail, and the magistrate is not empowered to take it.  The difficulty with this construction is, that the Special Sessions can only be organized after the prisoner has elected to be tried by such court, or has for twenty-four hours neglected or refused to give bail.  And, consequently, he is not brought before such court until after his right to give bail has either been waived by election or neglect.  And more than this, the court of Special Sessions never possessed the right to take bail for any offence.  Whereas the respective magistrates named in the section under consideration, each of them have by statute, 2 *R. S.* 710, " power to let to bail in all cases of misdemeanor."  The offence with which the prisoner is charged, is by this act declared to be a misdemeanor, and as no part of the law in terms or by necessary implication, repeals the law authorizing these magistrates to take bail in all cases of misdemeanor, I must hold that the recorder should have taken bail when it was offered.  By the acts constituting the Recorder's Court for this city, the recorder has the same jurisdiction as to criminal cases as justices of the peace throughout the state, and consequently whatever is said in reference to the powers and duties of the recorder, under this section, are equally applicable to justices of the peace, and every magistrate named in the fifth section.  If it was the intention of the legislators to take away the ordinary right to an examination and bail, the act should have forbidden the magistrate before whom the accused is brought from taking such examination and bail.  But there is no such prohibition.  The confusion or mistake, if any there is, has arisen from the neglect on the part of the lawmakers to distinguish between the magistrates, as such, and the court of Special Sessions.  The conclusions to which I have arrived in this case are:

1. That the right to a trial by a common law jury of twelve men in cases of misdemeanor is secured by the constitution, and can not be taken away by the legislature.

2. That the law in reference to an examination applicable

to other cases of misdemeanor is alike applicable to offences for selling intoxicating liquor contrary to the provisions of the prohibitory law.

3. That the person charged with an offence for selling intoxicating liquor contrary to the provisions of the prohibitory law, has the right to give bail to appear and answer at the next criminal court, having cognizance of the offence and in which he may be indicted, the same as in other misdemeanors triable by a court of Special Sessions.

The prisoner on giving satisfactory bail in the sum of $500, conditioned as required by law, must be discharged. I have reached this conclusion on the examination of this case as an original question, but I am fully supported by two of my brethren, Judges Morris and Parker, each of whom have had a similar case before them, and have come to a like conclusion.